UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

AMERICAN BUILDING MAINTENANCE
COMPANY OF NEW YORK,

                    Plaintiff,

     -against-                                        1:06-CV-1366
                                                       (LEK/RFT)
ACME PROPERTY SERVICES, INC. *et al.*,

                    Defendants.

_____

## MEMORANDUM-DECISION AND ORDER

       Plaintiff American Building Maintenance Company of New York ("ABM" or "Plaintiff"), a

California corporation, commenced this action asserting a variety of contract and business tort

claims against its former employees, Defendants James and Khalan Hennesey (collectively, the

"Henneseys"), and their company J.B.H. Inc., d/b/a Carpet Master Cleaning and Restore Master

("JBH").  Amended Compl. (Dkt. No. 5).  Plaintiff has also sued another former employee, Mark

Clasen ("Clasen"), and his current employer, Specialty Concrete Systems ("Specialty").  ABM also

filed claims against its former business partners Acme Property Services, Inc., d/b/a Acme Disaster

Recovery Services, Catastrophe International, LLC, and Curtis Swanson (collectively, the "Swanson

Defendants").  Id.  Finally, Plaintiff also asserts claims against James MacNary, another former

employee, and his current company, Northline Landscaping.[1]  Id.  Presently before the Court are: (1)

a Motion to dismiss filed by the Henneseys and JBH; (2) a Motion for judgment on the pleadings

submitted by Clasen; and (3) a Motion to Dismiss or, alternatively, to stay for arbitration, filed by

_____

       [1] Plaintiff also sued Prosweep LLC (incorrectly sued by Plaintiff as "Prosweep Street
Cleaning Service"), however, it voluntarily stipulated to Prosweep's dismissal without prejudice.
See Dkt. No. 90.

the Swanson Defendants. <u>See</u> Dkt. Nos. 56, 58, 62. For the following reasons, the Court grants in part and denies in part Defendants' Motions to dismiss ABM's Amended Complaint.

## I.      Background

In March, 2001, ABM entered into an agreement (the "Transaction Agreement") to purchase JBH from the Henneseys. Amended Compl. (Dkt. No. 5) at ¶ 24. According to ABM, at the time of the purchase, JBH provided a number of services to its clients, including janitorial, carpet cleaning and maintenance, landscaping, snow plowing, property restoration, concrete cleaning and sealing services in the Albany, New York area. <u>Id.</u> at ¶ 23. ABM paid the Henneseys a down payment of $1,566,378.00 and, pursuant to the Transaction Agreement, agreed to pay them 49.50 % of certain operating profits and new business over a five (5) year period. <u>Id.</u> at ¶ 29. The Henneseys also each entered into an Acquisition Seller Employment Agreement with ABM (the "Employment Agreements") that commenced immediately after the effective date of the sale and covered a five (5) year period. <u>Id.</u> at ¶¶ 36-37. As explained below, each of these agreements contained a restrictive covenant. <u>See</u> Section II.B.1(ii). The Henneseys also agreed to manage ABM's Albany branch. <u>Id.</u> at ¶ 39.

In 2003, AMB alleges that, based in part on information provided by the Henneseys, it discontinued its concrete services business in Albany. <u>Id.</u> at ¶ 43. ABM terminated Clasen's employment after it ceased to provide concrete services in Albany. <u>Id.</u> at ¶ 44. ABM then determined that its landscaping and snow removal services were not profitable and also ceased to offer those services. <u>Id.</u> at ¶ 45.

In the latter part of 2004, ABM claims that James Hennesey urged it to seek restoration work in those areas in Florida then-recently devastated by several hurricanes. <u>Id.</u> at ¶ 46. James

Hennesey allegedly expanded this business to the Cayman Islands in order to service clients impacted by Hurricane Ivan. Id. at ¶¶ 48-50.  ABM asserts that the Henneseys became acquainted with the Swanson Defendants through their work in the Cayman Islands and Florida, and that this relationship was "instrumental" to the procurement of restoration and other maintenance work in both locales.  Id. at ¶¶ 51-52.  As a result of this relationship, ABM entered into an agreement with the Swanson Defendants (the "Swanson Agreement"), which, according to Plaintiff, entitled ABM to receive a portion of the net profit from restoration work performed or subcontracted by the Swanson Defendants.  Id. at ¶ 53.  ABM alleges that James Hennesey spent a significant amount of time away from its Albany branch after entering into the Swanson Agreement, including taking various business trips to hurricane-affected areas following the devastation left by Hurricane Katrina.  Id. at ¶ 57.  Both before and after these trips, ABM claims that employees in the Albany branch observed that the Henneseys had lost interest in pursuing business in the landscaping, snow removal, and concrete services in the Albany area.  Id. at ¶¶ 58-59.  The Swanson Defendants terminated the Swanson Agreement in or about August, 2006.  Id. at ¶ 96.  ABM asserts that James Hennesey induced the Swanson Defendants to terminate their agreement with ABM and enter into a similar agreement with the Henneseys.  Id. at ¶¶ 97-99.

ABM claims that sometime prior to January 2, 2005 and during his employment with ABM, James Hennesey and Clasen eventually became the sole owners of Specialty, and James Hennesey eventually acquired a 51 % ownership interest.  Id. at ¶ 61.  ABM states that James Hennesey intentionally dissipated ABM's concrete services business in Albany and diverted it to Specialty. Id. at ¶ 63.  ABM alleges that the Henneseys never disclosed that they owned an interest in Specialty and continued to provide concrete services.  Id. at ¶ 86.  ABM similarly claims that James Hennesey

3

reached an agreement with MacNary, who had been fired from ABM, to divert landscaping and snow removal business to Northline Landscaping in exchange for receiving a percentage of the net profits.  Id. at ¶¶ 65-70.

ABM also claims that the Henneseys, Clasen, and MacNary became intimately familiar with and have misappropriated ABM's confidential information and trade secrets, specifically: "(1) the scope and pricing of ABM's services, including the 'price point' or negotiable profit margin, included in ABM's bids for new projects; (2) ABM's operating practices and methods, including pricing and billing methods and marketing and selling practices; (3) ABM's client preferences; (4) customization and implementation methodology; (5) sales force support services; (6) business opportunities; (7) strengths and weaknesses of ABM's products and services; and (8) contact names."  Id. at ¶ 74.  ABM claims that the Henneseys improperly removed all of ABM's contracts related to its Albany-area snow plowing and landscaping customers, which included information related to its proprietary pricing and customer information.  Id. at ¶¶ 87-89.  Moreover, ABM alleges that the Henneseys, Clasen, and MacNary unlawfully appropriated ABM's equipment and resources for use in and to benefit their side ventures, including, Specialty, Northline, and the Swanson Defendants.  Id. at ¶¶ 90-94.

## II.     Discussion

### A.     Standard of Review

Rule 12(b) of the *Federal Rules of Civil Procedure* require that if matters "outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 . . ."  FED. R. CIV. P 12(b).  However, if a court excludes extrinsic evidence submitted to it from its considerations, motions brought under

Federal Rule of Civil Procedure 12(b) do not need to be converted to motions for summary judgment.  See Chambers v. Time Warner, Inc., 282 F.3d 147, 154 (2d Cir. 2002).  The parties have submitted significant numbers of affidavits and exhibits in support of their Motions; Plaintiff has also made submissions that include a number of attachments outside of the Amended Complaint. However, aside from documents properly considered by a court on a motion to dismiss, the Court has not considered the various exhibits and affidavits submitted by Plaintiff and Defendants.[2] Accordingly, Defendant's Motions will not be considered as motions for summary judgment.

Dismissal of a complaint, pursuant to Rule 12(b)(6) of the *Federal Rules of Civil Procedure*, for failure to state a claim upon which relief may be granted is proper "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations" set forth therein.  Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002).  "[A] plaintiff is required only to give fair notice of what the claim is and the grounds upon which it rests." Leibowitz v. Cornell Univ., 445 F.3d 586, 590 (2d Cir. 2006).  A court considering a Rule 12(b)(6) motion "must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant."  Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994). However, at this stage in an action, "'the issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims.'"  Chance v. Armstrong, 143 F.3d 698, 701 (2d Cir. 1998) (quoting Branham v. Meachum, 77 F.3d 626, 628 (2d Cir. 1996) (quoting Gant v. Wallingford Bd. of Educ., 69 F.3d 669, 673 (2d Cir. 1995)).  Clasen has

---

[2] On a motion to dismiss, a necessary prerequisite to a court's consideration of a document, other than the complaint, is a plaintiff's reliance on the terms and effect of that document in drafting the complaint.  Chambers, 282 F.3d at 153.  In reaching its decision, the Court only considered the facts as presented in Plaintiff's Amended Complaint, the excerpts of the various agreements at issue, and the exhibits filed with the Amended Complaint.

moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), which permits

any party to move for judgment on the pleadings after the pleadings are closed.  FED. R. CIV. P.

12(c).  The standard for granting a motion for judgment on the pleadings is the same as that under a

motion for failure to state a claim: the Court must accept all allegations in the Amended Complaint

as true and draw all inferences in favor of the non-moving party, in this case, ABM.  See Patel v.

Contemporary Classics of Beverly Hills, 259 F.3d 123, 126 (2d Cir. 2001).

### B.    Plaintiff's Claims Against the Henneseys and Clasen

#### 1.    Count One: Breach of Common Law and Contractual Duties Not to Disclose Confidential Information and Trade Secrets

Plaintiffs assert that the Henneseys, Clasen, and MacNary have common law and/or

contractual duties not to disclose ABM's confidential information and trade secrets.  Amended

Compl. (Dkt. No. 5, Attach. 1) at ¶ 118.  The Henneseys and Clasen both argue that Plaintiff has

failed to plead the existence of information that would constitute a trade secret.  In addition, the

Henneseys argue that ABM cannot rely on the Employment Agreements to establish a breach of a

restrictive covenant because it conflicts with the Transaction Agreement, which does not create such

a covenant.  Henneseys Mem. in Support (Dkt. No. 56, Attach. 9) at 7.  Clasen also asserts that he

never entered into any contract with ABM that would give rise to such duties.  Clasen Mem. in

Support (Dkt. No. 58, Attach. 2) at 5-6.  In response, ABM cites precedent suggesting that the courts

have in the past considered information like that identified in the Amended Complaint to merit trade

secret protection.  Plntf's Mem. in Opp. (Dkt. No. 77, Attach. 1) at 11-12.  ABM also cites the

Henneseys' Employment Agreements, which identify as proprietary information the type of

information at issue in this action.  Id.

6

####         i.        Trade Secret Protection For Information at Issue

Clasen and the Henneseys essentially argue that no trade secrets are at issue and, therefore, Count One should be dismissed.  ABM identifies the following as trade secrets: (1) the scope and pricing of ABM's services, including the "price point" or negotiable profit margin, included in ABM's bids for new projects; (2) ABM's operating practices and methods, including pricing and billing methods and marketing and selling practices; (3) ABM's client preferences; (4) customization and implementation methodology; (5) sales force support services; (6) business opportunities; (7) strengths and weaknesses of ABM's products and services; and (8) contact names. Amended Compl. (Dkt. No. 5, Attach. 1) at ¶ 74.  At this point, the Court need not determine if ABM can prevail under Count One, but only if there is any set of facts pursuant to which the Court could grant ABM relief.  See Swierkiewicz, 534 U.S. at 514.  Therefore, the Court will review if any of the information in ABM's Amended Complaint may be considered a trade secret.

A trade secret is "any formula, pattern, device or compilation which is used in one's business, and which gives [the owner] an opportunity to obtain an advantage over competitors who do not know or use it."  Softel, Inc. v. Dragon Med. & Scientific Commc'ns, Inc., 118 F.3d 955, 968 (2d Cir. 1997), cert. denied, 523 U.S. 1020 (1998).  New York courts have considered the following factors to determine whether information constitutes a trade secret: "the extent to which the information is known outside of the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken by the business to guard the secrecy of the information; (4) the value of the information to the business and its competitors; (5) the amount of effort or money expended by the business in developing the information; [and] (6) the ease or difficulty with which the information could be properly acquired or duplicated by others."

7

North Atl. Instruments, Inc. v. Haber, 188 F.3d 38, 44 (2d Cir. 1999) (quoting Ashland Mgmt. Inc. v. Janien, 82 N.Y.2d 395, 407 (1993)).  However, the existence of a trade secret is usually treated as a question of fact, and, therefore, an analysis of these factors requires an examination of a developed record.  See Chevron U.S.A., Inc. v. Roxen Serv., Inc., 813 F.2d 26, 29 (2d Cir. 1987); see also Integrated Case Mgmt. Servs., Inc. v. Digital Transactions, Inc., 920 F.2d 171, 174 (2d Cir. 1990) ("Existence of a trade secret is a question of fact for the determination of the trier of fact, secrecy being a basic element.").

There is ample precedent that may support ABM's assertion that its customer information qualifies as protected, confidential information.  For example, ABM claims that information related to its clients' preferences and the customization of its services undertaken to address those preferences are trade secrets.  Courts have found that "information detailing the characteristics and nature of customer specifications and preferences may be eligible for trade secret protection."  Jay's Custom Stringing v. Jonghwan Yu, No. 01 Civ. 1690 (WHP), 2001 U.S. Dist. LEXIS 9298, at *15 (S.D.N.Y. July 6, 2001); see also Greenwich Mills v. Barrie House Coffee Co, 459 N.Y.S.2d 454, 459 (App. Div. 2d Dep't 1983) (The court denied defendants' motion for summary judgment because they had access to "confidential information concerning various customers, preferences for particular, precise blends of coffee and the prices those customers were willing to pay for those blends.  We cannot say, as a matter of law, that if that allegation is proven at trial, it would be insufficient to constitute a meaningful trade secret."); David Fox & Sons, Inc. v. King Poultry Co., 262 N.Y.S.2d 983, 987 (Sup. Ct. N.Y. Co. 1964) ("While we may not say that the customers for poultry products constitute a secret, . . . information [about] . . . the peculiar needs of plaintiffs, customers, and precise merchandise, markup, etc., was derived from the intimate knowledge of

plaintiffs' business by the two former employees."), aff'd without opinion, 23 A.D.2d 966, 259

N.Y.S.2d 1012 (App. Div. 1st Dep't 1965).

ABM also claims that its customer list is entitled to trade secret protection.  Trade secret

protection will generally not attach when customers are readily ascertainable outside the employer's

business as prospective users or consumers of the employer's services or products; however, if there

has been a physical taking or studied copying, a court may enjoin the defendants from soliciting

customers on the list.  Churchill Commc'ns Corp. v. Demyanovich, 668 F. Supp. 207, 211

(S.D.N.Y. 1987) (citing, inter alia, Leo Silfen, Inc. v. Cream, 29 N.Y.2d 387, 391-93 (1972)).  The

Second Circuit has stated that "[n]umerous cases applying New York law have held that where . . .

it would be difficult to duplicate a customer list because it reflected individual customer

preferences, trade secret protection should apply."  North Atl. Instruments, 188 F.3d at 46 (citing

FMC Corp. v. Taiwan Tainan Giant Indus. Co., 730 F.2d 61, 63 (2d Cir. 1984) (per curiam)

(reversing as clearly erroneous a district court's finding that a customer list was not a trade secret

where it would have been difficult to find clients without the employee's help)); Webcraft Techs.,

Inc. v. McCaw, 674 F. Supp. 1039, 1044 (S.D.N.Y. 1987) (Leval, D.J.) (protecting as a trade secret

a customer list that took great time and effort to compile, including "development of a specialized

knowledge of the customer's operations and needs"); Nutmeg Techs., Inc. v. Mahshie,, No. 89-CV-

511, 1989 WL 60285, at *5-*6 (N.D.N.Y. June 6, 1989) (McCurn, C.J.) (holding that a customer

list whose "customers are only cultivated after extensive efforts by [the plaintiff]" was a trade

secret); Giffords Oil Co., Inc. v. Wild, 483 N.Y.S.2d 104, 106 (App. Div. 2d Dep't 1984) (holding

that a customer list that required substantial time and money to compile and that contained

information "which could only be achieved through personal solicitation" was a protectable trade

secret); Leo Silfen, 29 N.Y.2d at 392-93 ("Where the customers are not known in the trade or are discoverable only by extraordinary efforts courts have not hesitated to protect customer lists and files as trade secrets. This is especially so where the customers' patronage had been secured by years of effort and advertising effected by the expenditure of substantial time and money.").

ABM also seeks trade secret protection for information related to its operating practices and methods, including pricing and billing methods and marketing and selling practices; sales force support services; business opportunities; and the strengths and weaknesses of ABM's products and services. Courts have found that information of this type may be considered confidential. See Churchill, 668 F. Supp. at 212 (citing Business Intelligence Servs., Inc. v. Hudson, 580 F. Supp. 1068, 1072 (S.D.N.Y. 1984) ("Client information, such as data on the types of hardware and software ordered by specific clients, lists of products sold to clients but not yet developed and problems arising in the course of client relations, are also protectible as a trade secret.")); Giffords, 483 N.Y.S.2d at 106 ("Information, such as fuel oil capacity of customers, tanks, and the amount certain customers are willing to pay, which aid plaintiffs in establishing prices and which could only be achieved through personal solicitation" is confidential.).

In this case, ABM has adequately alleged in its Amended Complaint that the Henneseys improperly removed all of ABM's contracts and the related customer information related to its Albany-area customers, which included information related to its proprietary pricing and customer information. See Amended Compl. (Dkt. No. 5) at ¶¶ 87-89. ABM's allegations, which the Court must accept at this stage of the litigation, suggest that it could prevail on this cause of action and entitle it to gather and present related evidence.

10

**ii.     Defendants May Have a Duty Not to Disclose Plaintiff's Information**

Defendant Clasen asserts that there is no restrictive covenant applicable to him because he never entered into any contract with ABM, and, therefore, ABM's cause of action for contractual duty not to disclose should be dismissed.  Clasen Mem. in Support (Dkt. No. 58, Attach. 2) at 6.  In addition, Clasen argues that because he is not bound by a restrictive covenant, it would be improper to enjoin him, absent a showing that he possesses ABM's trade secrets, from competing with ABM based on a breach of a duty of loyalty.  Id. at 6-7.  ABM has not alleged that Clasen signed a contract with it limiting his use of its proprietary information.  However, New York courts have found that former employees can be restricted from using their former employer's trade secrets to advance their own interests, even when they have not signed an employment agreement limiting their activities.  See David Fox & Sons, Inc., 262 N.Y.S.2d at 988-89 (collecting cases).  As a result, even though ABM has not alleged that Clasen signed a restrictive covenant, if the Court finds that ABM's information merits trade secret protection, Clasen may have a duty not to use or disclose ABM's information for his benefit.  Accordingly, Clasen's Motion to dismiss Count One is denied.

While the Henneseys may also be bound by common law rules limiting former employees' use of information deemed by a court to be trade secrets, they, unlike Clasen, have signed two contracts - the Employment Agreements and the Transaction Agreement - that contain restrictive covenants with ABM.  Amended Cmpl. (Dkt. No. 5) at ¶¶ 24, 36-37.  According to ABM, paragraph L of the Henneseys' Employment Agreements establishes a restrictive covenant that prevents the Henneseys from using ABM's information to compete with it; the relevant provision expressly states, "Employee shall not seek, solicit, take away, obtain or accept the patronage of any customer

11

or sales prospect of [ABM] through the direct or indirect use of any Proprietary Information of

[ABM], or by any other unfair or unlawful business practice." Id. at ¶ 38.  However, the Henneseys

argue that the Transaction Agreement contained a covenant not to compete that prevents them from

providing any "janitorial services anywhere within the Counties in which [JBH] engages in or has

engaged in the business during the one year period prior to the effective closing date."  Henneseys'

Mem. in Support (Dkt. No. 56, Attach. 9) at 3.  According to the Henneseys, under the terms of the

Transaction Agreement, they are free to compete for any and all types of business performed by

ABM with the exception of janitorial services within certain counties.  Id.  The Henneseys argue

that there is a conflict between the Transaction Agreement and their Employment Agreements and

that, pursuant to paragraph X of the Employment Agreements, "in the event there are any conflicts

between provisions of [Employment Agreements] and the provisions covering these above

referenced broad subject matters as are contained in the Transaction Agreement . . . the provisions

of the Transaction Agreement shall prevail . . . " Henneseys' Mem. in Support (Dkt. No. 56, Attach.

9) at 7.  In response, ABM asserts that the two restrictive covenants protect two different interests:

one protects ABM from any interference by the Henneseys that might deprive it of the benefit of its

purchase of JBH's janitorial business, while the other provision protects the goodwill associated

with ABM's ongoing businesses and proprietary information that the Henneseys had access to by

virtue of their employment.  Plntf's Mem. in Opp. (Dkt. No. 77, Attach. 1) at 30.

     Under New York law, contractual interpretation is a question of fact when there is ambiguity

on the face of a contract and the fact finder must determine what the parties' intent was based on the

credibility of extrinsic evidence or on a choice among reasonable inferences.  See Brinson v.

Kulbacks & Assoc., Inc. 744 N.Y.S.2d 621, 623 (App. Div. 4th Dep't 2002) ("Because the

determination of the intent of the parties depends on the credibility of extrinsic evidence, the issue is one of fact for the trier and cannot be resolved as a matter of law."). The question of whether a contract is ambiguous is a question of law. South Road Assocs., LLC v. Int'l Bus. Machs. Corp., 4 N.Y.3d 272, 278 (2005). A contract that is susceptible to two reasonable interpretations is considered ambiguous. MDW Enters., Inc. v. CNA Ins. Co., 772 N.Y.S.2d 79, 82 (App. Div. 2d Dep't 2004). There is ambiguity in the contracts between the Henneseys and ABM. The Henneseys and ABM have both presented reasonable interpretations of the interaction between the restrictive covenants in the Employment Agreements and the covenant not to compete in the Transaction Agreement. The Henneseys argue that the Transaction Agreement already contains a covenant not to compete and that, as a result, the restrictive covenant in the Employment Agreements is duplicative and is void under the terms of the two agreements. However, ABM reasonably responds that the two covenants govern different business lines and interests and are not in conflict. These conflicting interpretations mean that ABM is entitled to present evidence to the fact finder regarding the parties' intentions with respect to which restrictive covenant applies, and if that covenant is reasonable. As a consequence, the Hennesey's Motion to dismiss Count One is denied.

### 2.   Count Two: Unfair Competition

The Henneseys and Clasen move to dismiss ABM's claim for common law unfair competition on the grounds that ABM failed to show that: (1) there was any misappropriation of information that merits trade secret status, and (2) ABM was not deprived of the opportunity to reap profits from this information because it has ceased to offer snow plowing, concrete, and landscaping services. Henneseys' Mem. in Support (Dkt. No.56 , Attach. 9) at 11-12; Clasen Mem. in Support (Dkt. No. 58, Attach. 2) at 10-11. ABM counters that New York law prohibits the taking and

13

exploiting of proprietary information for use by a former employee in competition with their former employer. Plntf's Mem in Support (Dkt. No. 77, Attach. 1) at 14. ABM asserts that Clasen and the Henneseys misappropriated its customer information, business opportunities under negotiation, and copies of customer contracts and used that information to compete against it. Id.

ABM's unfair competition claim invokes a misappropriation theory. Under New York law, this type of unfair competition claim "usually concerns the taking and use of the plaintiff's property to compete against the plaintiff's own use of the same property." Roy Exp. Co. Establishment v. Columbia Broadcasting Sys., Inc., 672 F.2d 1095, 1105 (2d Cir. 1982). Courts have found that the misappropriation of detailed, internal customer information can give rise to a claim of unfair competition, but only when that customer information has several of the attributes of a trade secret and is being used in breach of an agreement, confidence, or duty, or as a result of discovery by improper means. See Integrated Cash Mgmt Servs., Inc. v. Digital Transactions, Inc., 920 F.2d 171, 173 (2d Cir. 1990); Innoviant Pharm., Inc. v. Morganstern, 390 F. Supp. 2d 179, 194 (N.D.N.Y. 2005) (Peebles, M.J.).

As discussed above, the Court finds that ABM is entitled to offer evidence in support of the claim that its customer-related information merits trade secret protection. Moreover, the Court has also found that both Clasen and the Henneseys may have either a common law duty and/or a contractual obligation not to disclose ABM's information, which ABM is also entitled to prove. These two findings are sufficient to sustain ABM's unfair competition claim against Clasen's and the Henneseys' Motions to dismiss. Additionally, as is necessary to plead an unfair competition claim, ABM has also adequately alleged that Clasen and the Henneseys used its property to compete against it in the landscaping, concrete, and snow removal business. Specifically, ABM asserts that

14

James Hennesey intentionally dissipated ABM's concrete services business in Albany and used ABM's information to divert that business to Specialty and Clasen.  See Amended Compl. (Dkt. No. 5, Attach. 1) at ¶¶ 61-63.  ABM also claims that the Henneseys improperly removed all of ABM's contracts related to its Albany-area snow plowing and landscaping customers, which included information related to its proprietary pricing and customer information, and reached an agreement with MacNary to divert landscaping and snow removal business to Northline Landscaping in exchange for receiving a percentage of the net profits.  Id. at ¶¶ 65-70, 87-89.  Moreover, ABM alleges that the Henneseys, Clasen, and MacNary unlawfully appropriated ABM's equipment and resources for use in and to benefit  their side ventures, including, Specialty and Northline.  Id. at ¶¶ 90-94.  Accordingly, the Court denies Clasen's and the Henneseys' Motion to dismiss ABM's unfair competition claim.

### 3.    Count Three: Breach of Fiduciary Duty and Duty of Loyalty

Clasen seeks to dismiss ABM's breach of duty of loyalty and fiduciary duty claim on the grounds that he was not competing with ABM, which was no longer providing concrete services to its clients.  Clasen Mem. in Support (Dkt. No. 58, Attach. 2) at 11.  Clasen also argues that he never signed a restrictive covenant and had no contractual duty to ABM.  Id.  The Henneseys argue that the applicable restrictive covenant does not relate to concrete work, and that there is no showing that they used ABM's resources to establish any business relationships.  Henneseys' Mem. in Support (Dkt. No. 56, Attach. 9) at 12-13.  In addition, the Henneseys assert that ABM sold its landscaping and plowing equipment and that they could not compete with ABM because it had ceased to offer those services and was out of those businesses.  Id.

New York law obligates an employee to be loyal to his employer and prohibits him "'from

acting in any manner inconsistent with his agency or trust and is at all times bound to exercise the utmost good faith and loyalty in the performance of his duties.'" Phansalkar v. Andersen Weinroth & Co., L.P., 344 F.3d 184, 200 (2d Cir. 2003) (quoting W. Elec. Co. v. Brenner, 41 N.Y.2d 291, 295 (1977)).  As a result, employees not bound by restrictive covenants still have a duty of loyalty to their employer.  Consequently, ABM did not have to plead that Clasen or the Henneseys were bound by a restrictive covenant to assert that they had breached common law fiduciary duties or duties of loyalty.  Moreover, the employee may be required to forfeit his payment even if his former employer did not suffer any provable damage as a result of the breach of fidelity.  Phansalkar, 344 F.3d at 200 (quoting Feiger v. Iral Jewelry, Ltd., 41 N.Y.2d 928, 928 (1977)).  Therefore, while ABM has asserted damages resulting from the alleged breaches of loyalty, it does not have to prove such damages in order to succeed on its third count, the Henneseys' and Clasen's arguments related to ABM's termination of its landscaping, plowing, and concrete services notwithstanding.

    In addition, New York courts have found defendants similarly situated to Clasen and the Henneseys liable for breaches of loyalty and fiduciary duties.  For example, the Appellate Division, Second Department affirmed an order finding former employees, one of whom had been a corporate officer, violated their duty of loyalty and fiduciary duty when they used their former employer's proprietary secrets to build a competing business.  See Laro Maint. Corp. v. Culkin, 700 N.Y.S.2d 490, 492 (App. Div. 2d Dep't 1999).  The First Department of the Appellate Division has also held that a plaintiff sufficiently stated a cause of action for breach of fiduciary and common-law duties when it claimed that defendants, while in its employ, planned, and later formed, a competing corporation that obtained a contract from their employer's customer using the employer's confidential information.  See CBS Corp. v. Dumsday, 702 N.Y.S.2d 248, 251 (App. Div. 1st Dep't

2000).  ABM alleges that the Henneseys and Clasen, while in its employ, engaged in negotiations with current and prospective clients for the purpose of establishing competing businesses.  See, e.g., Amended Compl. (Dkt. No. 5, Attach. 1) at ¶¶ 130-136.  These allegations are sufficient to withstand Clasen's and the Henneseys' Motions to dismiss Count Three, and, accordingly, the Court denies the Motions.

### 4.     Count Four: Misappropriation of Proprietary, Confidential Information

Both Clasen and the Henneseys again argue that the information at issue does not merit trade secret protection, and, as a result, ABM cannot plead any facts under which it can prevail under a cause of action seeking to impose liability for misappropriation of trade secrets.  Henneseys Mem. in Support (Dkt. No. 56, Attach. 9) at 15; Clasen Mem. in Support (Dkt No. 58, Attach. 2) at 12.  As discussed above, the Court finds that ABM may proceed on trade-secret-related claims because it has adequately alleged that the information at issue merits trade secret protection.  See discussion *supra* Section II.B.1(i).  Therefore, the Court denies Clasen's and the Henneseys' Motion to dismiss Count Four.

### 5.     Count Five: Unjust Enrichment

In order to plead adequately a claim from unjust enrichment, ABM must assert that it bestowed a benefit on the Henneseys and Clasen and that it was not adequately compensated for that benefit.  See Korff v. Corbett, 794 N.Y.S.2d 374, 377 (App. Div. 1st Dep't 2005).  Clasen and the Henneseys assert that ABM's unjust enrichment claim should be dismissed because they did not receive any benefit from ABM; they allegedly never received any trade secrets nor benefitted at ABM's expense because ABM no longer engaged in the various businesses Defendants allegedly participated in at ABM.  Henneseys Mem. in Support (Dkt. No. 56, Attach. 9) at 15-16; Clasen

Mem. in Support (Dkt No. 58, Attach. 2) at 12-13.  However, at this stage in the litigation, ABM

"need only allege the necessary elements of the claim, and not provide evidentiary support."  See

Korff, 794 N.Y.S.2d at 377.  ABM has alleged that the Henneseys and Clasen have benefitted from,

among other things, the use of ABM's staff and resources for their own side ventures in

contravention of their employment obligations and ABM's efforts to build its various businesses.

See, e.g., Amended Compl. (Dkt. No. 5, Attach. 1) at  ¶¶ 90-93, 145.  As a result of the misuse of

these benefits by the Henneseys and Clasen, ABM claims it was denied the benefits it expected to

derive from their employment.  Id. at 146.  At this point in the action, ABM's allegations are

sufficient to sustain its burden and Clasen's and the Henneseys' Motions to dismiss Count Five are

denied.

### 6.      Count Six: Conversion

To establish a cause of action in conversion, ABM must show "legal ownership or an

immediate superior right of possession to a specific identifiable thing and must show that the

defendant exercised an unauthorized dominion over the thing in question . . . to the exclusion of the

plaintiff's rights."  Batsidis v. Batsidis, 778 N.Y.S.2d 913 (App. Div. 2d Dep't 2004).  However,

New York law does not recognize a conversion claim for "the withholding of indefinite, intangible,

and incorporeal species of property."  Matzan v. Eastman Kodak Co., 521 N.Y.S.2d 917, 918 (App.

Div. 4th Dep't 1987).  Clasen and the Henneseys argue that ABM has failed to show that they

converted any tangible property or specific money; they also argue that even if a trade secret is

considered a tangible piece of property, this claim still fails because no trade secrets are at issue.

Henneseys Mem. in Support (Dkt. No. 56, Attach. 9) at 17; Clasen Mem. in Support (Dkt No. 58,

Attach. 2) at 13.

Nevertheless, ABM has alleged facts upon which it may succeed on a conversion claim. For example, ABM claims that Clasen and the Henneseys misappropriated its tangible equipment in order to service clients in their concrete services side business. See, e.g., Amended Compl. (Dkt. No. 5, Attach. 1) at ¶ 187. Furthermore, ABM has also asserted that the Henneseys and Clasen removed its confidential information and proprietary documents, including its contracts related to previous snow plowing and landscaping customers. See, e.g., id. ABM is also entitled to present a conversion claim based on the unauthorized removal of less tangible property, like the claim based on its contracts and customer information. "New York has extended the tort of conversion to intangible property rights that are merged in, or identified with, some document." Phansalkar v. Andersen Weinroth & Co., L.P. 175 F. Supp. 2d 635, 639-40 (S.D.N.Y. 2001) rev'd on other grounds, 344 F.3d 184 (2d Cir. 2003) (internal quotation omitted) (citing, inter alia, Iglesias v. Hoyt, 848 F.2d 363, 364 (2d Cir. 1988) (noting that conversion does include documents that "embody an intangible right, such as stock certificates and bonds")). Based on the allegations and the law, ABM may be able to succeed on its conversion claim; accordingly, the Henneseys' and Clasen's Motions to dismiss the conversion claim is denied.

### 7.    Counts Seven: Tortious Interference with Contract

In New York, the tort of interference with contractual relations consists of four elements: (1) the existence of a valid contract between plaintiff and a third party; (2) defendant's knowledge of the contract; (3) defendant's intentional inducement of the third-party's breach of contract without justification; (4) actual breach of the contract; and (5) damages to plaintiff. Lama Holdings Co. v. Smith Barney Inc., 88 N.Y.2d 413, 424 (1996). Clasen argues that ABM cannot sustain a claim based on these elements because it has failed to identify any contract that he interfered with. Clasen

Mem. in Support (Dkt No. 58, Attach. 2) at 14. Clasen also claims that ABM did not suffer any damages from any alleged interference because it had already ceased to provide concrete services to its clients. Id. The Henneseys similarly argue that ABM only pointed to one contract they allegedly interfered with: the contract with the Swanson Defendants. Henneseys Mem. in Support (Dkt. No. 56, Attach. 9) at 18. However, the Henneseys explain that there is no showing that they were involved with the termination of the contract with the Swanson Defendants, and, therefore, ABM's tortious interference with contract claim must fail. Id.

_____ABM does not directly respond to Clasen's and the Henneseys' arguments related to the tortious interference with contract claim, but instead invokes the rule regarding a tortious interference with fiduciary duty, which is not at issue in Count Seven. See Plntf's Mem in Opp. (Dkt. No.77 , Attach. 1) at 26. However, in Kirch v. Liberty Media Corp., No. 04-5852-cv, 2006 U.S. App. LEXIS 22612 (2d Cir. Aug. 30, 2006), the Second Circuit did examine what plaintiffs must allege in order to plead adequately a claim for tortious interference with contract. In Kirch, the Circuit observed that the plaintiffs had properly pleaded the existence of a contract and the defendants' knowledge of that contract; specifically the complaint in Kirch stated, "The KirchGroup had a contract with JP Morgan, of which the Defendants were aware, concerning the design and implementation of Project Galaxy." Id. at *35. However, the Circuit found that Kirch and his co-plaintiff failed to allege actual breach when they contended only that the third-party "walked away, and [the contract] fell apart." Id. The Circuit inferred from the "walked away" allegations only that the third-party decided not to proceed, which did not amount to an allegation that it actually breached the contract by violating its terms. Id. at *36. As a result, the Circuit held that the plaintiffs in Kirch failed to plead a required element for tortious interference with contract. Id. The

20

Circuit's analysis is in keeping with past decisions that hold that the law requires some factual

specificity in pleading claims of tortious interference with contract.  Antonios A. Alevizopoulos &

Assocs. v. Comcast Int'l Holdings, Inc., 100 F. Supp. 2d 178, 186 (S.D.N.Y. 2000) (citing De Jesus

v. Sears, Roebuck & Co., 87 F.3d 65, 70 (2d Cir. 1996)).

 In the instant case, a review of ABM's Amended Complaint does not reveal any allegation

that Clasen knew of a specific contract or that he induced a customer to actually breach a contract

with ABM.  ABM has alleged that James Hennesey intentionally dissipated ABM's concrete

services business and diverted it to Specialty and that Clasen participated in the dissipation and

misappropriation of the concrete business.  Amended Compl. (Dkt. no. 5, Attach.1) at ¶¶ 62-64.

However, at no point in the Amended Complaint does ABM single out a particular contract that was

known to Clasen.  Moreover, there is no claim in the Amended Complaint that any client violated

the terms of a concrete services contract with ABM, and, therefore, actually breached such a

contract; without such an allegations, ABM's tortious interference with contract claim cannot go

forward.  See Kirch, 2006 U.S. App. LEXIS 22612, at *36.  The very general and conclusory

allegations made in connection with Clasen's dissipation of ABM's concrete services business do

not sufficiently plead a tortious interference of contract claim based on the standard established by

the Second Circuit in Kirch and Count Seven is dismissed with respect to Clasen.

 The Amended Complaint is more specific with respect to the Hennesey's interference with

ABM's contracts.  ABM has pleaded the existence of a valid contract and the Henneseys'

knowledge of that contract: according to ABM, it entered into the Swanson Agreement, which is

attached to the Amended Complaint as an exhibit, on October 3, 2005 and it was the Henneseys'

relationship with the Swanson Defendants that resulted in ABM entering into the agreement.  See

Amended Compl. (Dkt. No. 5, Attach. 1) at ¶ 53.  In addition, ABM also has alleged that the Swanson Agreement was breached and terminated.  Under the Swanson Agreement, it had the right to inspect the Swanson Defendants' books and record, but the Swanson Defendants declined ABM's request to inspect the relevant books and records.  Id. at ¶¶ 53-55. According to ABM, the Swanson Defendants terminated the Swanson Agreement with ABM in or about August, 2006, which it learned of through a letter presented to one of ABM's managers at a meeting in October, 2006.  Id. at ¶¶ 96, 101-02.  Moreover, ABM claims that the Henneseys induced these breaches, id. at ¶ 97, and alleges facts that are suggestive of that inducement, see id. at ¶¶ 103-04.  Specifically, at the October, 2006 meeting, the Swanson Defendants allegedly informed ABM that they had been paying James Hennesey commissions, which exceeded his salary from ABM, for selling restoration work.  Id. at ¶¶ 103-04.  Finally, ABM asserts it has been damaged by the Henneseys' actions and believes that James Hennesey's arrangement with the Swanson Defendants diverted business opportunities from it to the Henneseys.  See id. at ¶¶ 97-99.  Therefore, ABM has met its burden and the Court denies the Henneseys' Motion to dismiss the tortious interference with contract claim.

### 8.    Count Eight: Tortious Interference with Prospective Economic Advantage

To state a claim for tortious interference with prospective economic advantage in New York, the plaintiff must allege that "(1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship." Kirch, 2006 U.S. App. LEXIS 22612, at * 29.  The Circuit has made it clear that "mere suspicions are inadequate to support a claim for tortious interference with business

relations." Scutti Enters. v. Park Place Entm't Corp., 322 F.3d 211, 217 (2d Cir. 2003) (citing

Nadel v. Play-by-Play Toys & Novelties, Inc., 208 F.3d 368, 382 (2d Cir. 2000)).

   Allegations of tortious interference must be more than just mere suspicions, and, therefore,

the complaint must allege "interference with a specific identified business relationship with a third

party." Camp Summit of Summitville, Inc. v. Visinski, No. 06-CV-4994 (CM) (GAY), 2007 U.S.

Dist. LEXIS 28496, at *43 (S.D.N.Y. Apr. 16, 2007) (internal quotation omitted). As discussed

above, ABM's Amended Complaint does not identify any allegation that Clasen knew of a specific

contract and/or business relationship or that he intentionally interfered with the business of one of

ABM's customer. ABM has only alleged that Clasen participated in the dissipation and

misappropriation of the concrete business. Amended Compl. (Dkt. No. 5, Attach.1) at ¶¶ 62-64. As

a result of ABM's failure to identify a specific business relationship that was interfered with by

Clasen, ABM's tortious interference of prospective economic advantage claim is merely speculative

with regards to Clasen and is dismissed.

   With respect to the Henneseys, the only business relationship specifically identified by ABM

in its Amended Complaint is the one with Swanson Defendants. As explained in Section II.B.7, the

Henneseys allegedly knew of ABM's relationship with the Swanson Defendants and developed a

separate business relationship with them to ABM's detriment. While ABM may have adequately

pleaded the existence of a specific business relationship that was interfered with by the Henneseys,

in order to prevail it must also allege that the Henneseys acted out of malice or by improper means.

See PKG Group, LLC v. Gamma Croma, S.p.A., 446 F. Supp. 2d 249, 251 (S.D.N.Y. 2006).

   In spite of its conclusory allegations that the Henneseys undertook with malicious intent to

interfere with its prospective economic advantage, see Amended Compl. (Dkt. No. 5, Attach. 1) at ¶

166, ABM has more specifically alleged that the Henneseys made arrangements with the Swanson Defendants to  divert business opportunities from ABM for their own advantage, see id. at ¶¶ 97-99. However, New York law states that acts motivated by economic self-interest are not ones taken solely out of malice, as is required to meet this element of tortious interference.  Carvel Corp. v. Noonan, 3 N.Y.3d 182, 190 (2004).  ABM alleges that the Henneseys sought to benefit economically from their interference with the Swanson Defendants, therefore, the Court grants the Henneseys' Motion to the extent that ABM's claim purports to be based on the alternative of acting out of malice.  See PKG Group, LLC, 446 F. Supp. 2d at 251.

ABM has alternatively pleaded that the Henneseys wrongfully appropriated its business and, thus, interfered with its prospective economic advantage.  Amended Compl. (Dkt. No. 5, Attach. 1) at ¶ 165.  To create liability for tortious interference with prospective business relations, a plaintiff may also show that the defendant interfered through "dishonest, unfair, or improper means" that amount to misconduct constituting either a crime or an independent tort.  Carvel Corp., 3 N.Y.3d at 190.  As already discussed, ABM has adequately alleged a number of tort claims against the Henneseys, including those related to the misappropriation of trade secrets, which could serve as the sort of tortious conduct necessary to state a claim.  See Cardiocall, Inc. v. Serling, No. CV 06-6128, 2007 U.S. Dist. LEXIS 44646, at *28 (E.D.N.Y. June 20, 2007) (citing, inter alia, Fonar Corp. v. Magnetic Resonance Plus, Inc., 957 F. Supp. 477, 483-84 (S.D.N.Y. 1997) (tortious interference claim sustained where defendant's conduct involved wrongful use of customer list and false pretenses)).  However, the conduct on which these tort claims is based must be directed at the party with whom ABM has or seeks to have a business relationship, in this case the Swanson Defendants. See Cardiocall, 2007 U.S. Dist. LEXIS 44646, at *27.

24

The allegations made against the Henneseys do not specifically relate to any interference with the Swanson Defendants, but instead relate to the loss of business in the landscaping, concrete, and janitorial services businesses. ABM has not identified which clients the Henneseys interfered with nor made allegations regarding the "improper acts" undertaken by the Henneseys and directed at the Swanson Defendants. As a consequence, the Henneseys were not provided with fair notice of what kind of misconduct they are accused of engaging in. Without more, the Court grants the Henneseys' Motion to dismiss ABM's claim of tortious interference with prospective economic advantage against them. See PKG Group, LLC, 446 F. Supp. 2d at 251 (plaintiff asserted that defendants made certain false statements about plaintiff's conduct, and covertly undercut plaintiff's image and reputation with several identified companies; these allegations were sufficient, "albeit barely," to provide fair notice under Federal Rule of Civil Procedure 8 and tortious interference with prospective business relations was allowed to survive the motion to dismiss).

### 9.    Count Nine: Conspiracy

Clasen and the Henneseys argue that ABM's conspiracy claim should be dismissed because New York does not recognize civil conspiracy as an independent tort. Clasen Mem. in Support (Dkt. No. 58, Attach. 2) at 15; Henneseys' Mem. in Support (Dkt. No. 56, Attach. 9) at 19. In response, ABM states that a civil conspiracy claim may be pleaded when an underlying, actionable tort is established. Plntf's Mem in Opp. (Dkt. No. 77, Attach. 1) at 16. ABM is correct that a claim for civil conspiracy may stand if it is connected to a separate underlying tort. Treppel v. Biovail Corp., 2005 U.S. Dist. LEXIS 18511, at *17 (citing Alexander & Alexander Inc. v. Fritzen, 68 N.Y.2d 968, 969 (1986)). The allegations of conspiracy permit a plaintiff to connect the actions of separate defendants with an otherwise actionable tort. Snyder v. Puente De Brooklyn Realty Corp.,

746 N.Y.S.2d 517, 521 (App. Div. 3rd Dep't 2002).  ABM may plead the existence of a conspiracy

"to demonstrate that each defendant's conduct was part of a common scheme" by demonstrating the

underlying tort and the following four elements: (1) an agreement between two or more parties; (2)

an overt act in furtherance of the agreement; (3) the parties' intentional participation in the

furtherance of a plan or purpose; and (4) resulting damage or injury.  Treppel, 2005 U.S. Dist.

LEXIS 18511, at *17 (citing World Wrestling Fed'n Entm't, Inc. v. Bozell, 142 F. Supp. 2d 514,

532-33 (S.D.N.Y. 2001)).  However, more than a conclusory allegation of conspiracy or common

purpose is required to state a cause of action against a nonactor, who must have allegedly engaged in

some "independent culpable behavior."  Treppel, 2005 U.S. Dist. LEXIS 18511, at *18-*19 (citing

Schwartz v. Soc'y of the New York Hosp., 605 N.Y.S.2d 72, 73 (App. Div. 1st Dep't 1993)).

ABM has alleged that the Henneseys, Clasen, Swanson, and the other named Defendants,

"entered into an agreement, manifest by their deeds, by which they did purposely confederate . . . to

improperly and unlawfully deprive ABM" of its business assets and relationships and to compete

unfairly with it by stealing its confidential information.  Amended Compl. (Dkt. No. 5, Attach. 1) at

¶¶ 170-71.  ABM also alleges that Defendants "committed various overt acts" to accomplish the

objectives of these conspiracies.  Id. at ¶ 172.  Nevertheless, in order for the conspiracy claim to

survive Defendants' Motions, ABM must assert more specific allegations, including the times, facts,

and circumstances of the alleged conspiracy.  Brownstone Inv. Group, LLC v. Levey, 468 F. Supp.

2d 654, 661 (S.D.N.Y. 2007).

ABM must specifically allege that an agreement between two or more parties existed that

was part of a common scheme; yet, it only refers to two agreements in its Amended Complaint that

might qualify, neither of which refers to Clasen.  First, ABM alleges only that "upon information

and belief, sometime thereafter, James Hennesey and MacNary entered into a sales and marketing agreement wherein defendants [sic] James Hennesey would procure business opportunities for Northline in exchange for James Hennesey receiving a percentage of the net profits of Northline." Amended Compl. (Dkt. No. 5, Attach. 1) at ¶ 68. ABM supports its claim with very general allegations that the Henneseys diverted business to Northline and MacNary pursuant to this alleged agreement. Id. at ¶¶ 69-70. However, there is no allegation that MacNary undertook any overt act in furtherance of the claimed conspiracy.

Second, ABM asserts, as mentioned above, that "upon information and belief, defendant James Hennesey induced [the Swanson Defendants] to terminate [the Swanson Agreement] with ABM for the purpose of inducing [the Swanson Defendants] to enter into a similar agreement with Hennesey. . ." Id. at ¶ 97. Nevertheless, ABM again fails to allege any specific, overt, and improper act on the part of the Swanson Defendants that would have advanced such a conspiracy. Therefore, because ABM has not alleged any of the transactions or occurrences that give rise to its suspicion that Defendants have entered into "corrupt agreements," Defendants do not have notice of the claims against them. Accordingly, the Court grants Defendants' Motions to dismiss ABM's conspiracy claims.

### 10.    Count Ten: The Henneseys' Breach of Contract

ABM also asserts a breach of contract claim against the Henneseys for their failure to adhere to the obligations contained in their Employment Agreements. Id. at ¶¶ 174-178. As explained in Section II.B.1(ii), the Henneseys argue that the terms of the Employment Agreements do not apply. However, the Court finds that there is a dispute regarding the application of restrictive covenants found in the Employment Agreements and the Transaction Agreements and denies the Henneseys'

Motion to dismiss ABM's breach of contract claim.

### 11. Count Eleven: The Henneseys' Breach of Implied Covenant of Good Faith and Fair Dealing

ABM also claims that the Henneseys have breached the implied covenant of good faith and fair dealing implicit in their Employment Agreements.  Id. at ¶¶ 181-82.  However, as the Henneseys point out, New York law does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when it is based on the same facts as a breach of contract claim.  Harris v. Provident Life & Accident Ins. Co., 310 F.3d 73, 81 (2d Cir. 2002).  Nevertheless, ABM is also correct that a claimed breach of the implied covenant of good faith can survive a motion to dismiss if it is based on allegations different from those underlying the accompanying breach of contract claim.  Goldblatt v. Englander Commc'ns, LLC, No. 06 Civ. 3208 (RWS), 2007 U.S. Dist. LEXIS 4278, at *14 (S.D.N.Y. Jan. 22, 2007); but see W.S.A., Inc. v. ACA Corp., Nos. 94 Civ. 1868, 94 Civ. 1493 (CSH), 1996 U.S. Dist. LEXIS 14198, at *30 (S.D.N.Y. Sept. 27, 1996), modified on other grounds, 1996 U.S. Dist. LEXIS 18885 ("Because the duty of good faith is an implied contractual term, breach of the duty is merely a breach of the underlying contract.  Raising both claims in a single complaint is, therefore, redundant.  As a result, every court confronted with such a complaint brought under New York law has dismissed the claim for breach of the covenant of fair dealing.") (internal quotations omitted)).  Notwithstanding this very limited exception, there is still no separate action for a breach of good faith where the relief sought is intrinsically tied to the damages resulting from the breach of contract.  Alter v. Bogoricin, No. 97 Civ. 0662 (MBM), 1997 U.S. Dist. LEXIS 17369, at *20-21 (S.D.N.Y. Nov. 6, 1997).

ABM explains that its "breach of implied covenant claims against the Hennesey defendants

do not simply derive from acts alleged to breach the respective agreements, but rather are the result of the Henneseys' other acts and omissions, which form the basis of ABM's tort claims of conversion, fraud and misrepresentation."  Plntf's Mem in Support (Dkt. No. 77, Attach. 1) at 18. Aside from this explanation, ABM has not explicitly laid out the grounds on which its implied covenant of good faith claim is distinct from its breach of contract claim and in the Amended Complaint, in connection with this claim, it simply repeats and re-alleges all the allegations contained therein.  Amended Compl. (Dkt. No. 5, Attach. 1) at ¶ 181.  ABM's pleadings are not specific enough as to the distinctive grounds for this claim.  As a result, the Court finds that ABM has not adequately pleaded an independent breach of good faith claim and grants the Henneseys' Motion to dismiss it.

### 12.      Counts Twelve and Thirteen: Fraud and Misrepresentation

To state a claim for fraud under New York law, a plaintiff must allege "misrepresentation or concealment of a material fact, falsity, scienter by the wrongdoer, justifiable reliance on the deception, and resulting injury."  Zanett Lombardier, Ltd. v. Maslow, 815 N.Y.S.2d 547, 548 (App. Div. 1st Dep't 2006).  Pursuant to Federal Rule of Civil Procedure 9(b) ("Rule 9(b)"), the circumstances constituting fraud must be stated with particularity, although malice, intent, knowledge, and other condition of mind may be averred generally.  FED. R.. CIV. P. 9(b).  Clasen argues that the fraud claim was not pleaded with particularity with respect to him, as do the Henneseys with respect to allegations made against them.  Clasen Mem. in Support (Dkt. No. 58, Attach. 2) at 16; Henneseys Mem. in Support (Dkt. No. 56, Attach. 9) at 21.  ABM believes that it has pleaded its fraud claim with particularity.  Plntf's Mem. in Opp. (Dkt. No. 77, Attach. 1) at 21-23.

In order to satisfy Rule 9(b), a complaint must "'specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" Reserve Solutions, Inc. v. Vernaglia, 438 F. Supp. 2d 280, 287 (S.D.N.Y. 2006) (quoting Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993)). The Second Circuit has "'construed Rule 9(b) strictly in order to minimize strike suits, to protect defendants . . . from harm to their reputations resulting from ungrounded actions, and to give defendants notice of the precise conduct in issue.'" Reserve Solutions, 438 F. Supp. 2d at 287 (quoting Billard v. Rockwell Int'l Corp., 683 F.2d 51, 57 (2d Cir. 1982)).

An example of the specificity required appears in Reserve Solutions, where the court found that allegations met the first three requirements when the claim alleged that the plaintiff: (1) identified where the statements were made, at a meeting held in the defendants' offices in June, 2001; (2) stated which defendant made the statements; and (3) recounted the exact substance of the statement, specifically that the plaintiff would be named as an officer and receive 45 % equity stake in a particular company. Reserve Solutions, 438 F. Supp. at 287. In the instant action, ABM has failed to identify the who, what, when and where of the allegedly fraudulent statements. ABM does assert that Defendants made very general fraudulent statements, including that James Hennesey made false representations about the reasons for his frequent absences from the office; that Defendants made false representations regarding the reasons for the discontinuance of ABM's concrete, snow removal, landscaping and other services in Albany; and that various Defendants made misrepresentations related to their ownership of competing firms. Amended Compl. (Dkt. No. 5, Attach. 1) at ¶ 187. While ABM also alleges that the Henneseys made false and misleading statements with respect to the value of JBH, it has not pointed out a particular false statement that it

relied on when it entered into the Transaction Agreement.  See id. at ¶¶ 190-192.  These general

allegations do not identify the specific statements, what the contents of those statements were, and

when they were allegedly made.  As a result, Defendants have not been given precise notice of what

conduct is at issue and cannot effectively defend against these allegations.  See Billard, 683 F.2d at

57.  Accordingly, ABM's allegations of fraud and misrepresentation have not been pleaded with

sufficient particularity and the Court grants the Henneseys' and Clasen's Motions to dismiss the

fraud and misrepresentation claims.

### 13.    Count Fourteen: Conspiracy and Aiding and Abetting

As discussed above in Section II.B.9, a claim of conspiracy may proceed when it links

parties to a properly pleaded underlying tort.  See discussion *supra* Section II.B.9.  However, ABM

has failed to allege adequately the four elements necessary to state the existence of a conspiracy : (1)

an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the

parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or

injury.  Id.  Therefore, any conspiracy allegation is dismissed.

ABM claims that Defendants:

conspired with each other to assist, promote, facilitate, aid and abet, and conceal from ABM the
ongoing unlawful conduct described above in Counts One through Thirteen of this Complaint,
including, but not limited to the following: breaches of fiduciary duty and duty of loyalty owed
to ABM by, among others, James Hennesey, Khalan Hennesey, Clasen, Swanson, and MacNary,
and the aiding and abetting thereof; unfair competition; misappropriation of proprietary
confidential information and trade secrets; conversion; tortious interference with contractual
relations; tortious interference with prospective economic advantage; breaches of contracts;
breaches of implied covenants of good faith and fair dealings; and fraud.

Amended Compl. (Dkt. No. 5, Attach. 1) at ¶ 199.  When a cause of action alleges that each

defendant has acted in concert, there must be an independent tort to provide the basis for liability.

Small v. Lorillard Tobacco Co., Inc., 94 N.Y.2d. 43, 57 (1999).  ABM has adequately alleged claims against Clasen and the Henneseys for breaches of fiduciary duty and loyalty, unfair competition, misappropriation of trade secrets, and conversion.  The Court has also found that ABM adequately pleaded claims of tortious interference with contractual relations and breach of contract against the Henneseys.  As a result, these adequately pleaded claims may serve as an independent tort for aiding and abetting liability.  ABM's assertion of aiding and abetting liability predicated on the remaining claims, which have been dismissed, cannot go forward and is also dismissed.

When proceeding under an aiding and abetting or concerted action theory of liability in New York, a plaintiff must allege that the defendant (1) knew that another's conduct constituted a breach of duty and (2) gave substantial assistance or encouragement to the other.  Miele v. Am. Tobacco Co., 770 N.Y.S.2d 386, 392 (App. Div. 2d Dep't 2003).  The Court grants Clasen's and the Henneseys' Motions to dismiss Count Fourteen because ABM has not clearly alleged either of the elements with respect to specific Defendants and specific independent claims.

### C.  Claims Against the Swanson Defendants

The Swanson Defendants have moved the Court to dismiss the Amended Complaint for legal insufficiency or, in the alternative, to stay the action pursuant to an arbitration agreement with ABM.  See Swanson Motion (Dkt No. 62); Swanson Reply Mem. (Dkt. No. 85) at 3.  For the reasons, the Court grants the Swanson Defendants' Motion to dismiss.[3]

_____

[3] The Swanson Defendants correctly note that they are not named in Count One, Ten, Eleven, and Thirteen, and those counts do not state a claim against them.  As a result, those claims have not been asserted against the Swanson Defendants and there is no need to address them with respect to the Swanson Defendants.

32

> 1.   **Claims Related to Misuse of Trade Secrets and Property: Unfair Competition, Misappropriation, and Conversion**

ABM alleges in Count Two that Defendants, including the Swanson Defendants, used its confidential and proprietary business information to unfairly compete with it by soliciting its past, present, and future customers.  Amended Compl. (Dkt. No. 5, Attach. 1) at ¶¶ 122-125.  In Count Four, ABM alleges that Defendants, including the Swanson Defendants, misappropriated ABM's trade secrets in breach of an agreement, confidential relationship, duty, or as the result of discovery by improper means.  See Amended Compl. (Dkt. No. 5, Attach. 1) at ¶ 141.  In Count Six, ABM alleges that Defendants, again including the Swanson Defendants, wrongfully converted from it certain confidential information, property, and money.  Id. at ¶149.  Unlike Clasen and the Henneseys, ABM does not allege that the Swanson Defendants are former employees.  See id. at ¶¶ 2-3, 6.  Instead, the Swanson Defendants represent separate corporate actors that had entered into sales and marketing agreements with ABM to provide restoration work in flood damaged areas.  See id. at 51-53.  Accordingly, in order to sustain claims against the Swanson Defendants related to the misuse of its property and money, ABM must allege in its Amended Complaint that the Swanson Defendants had access to and asserted control over its property.  See, e.g., Mfrs. Hanover Trust Co. v. Chemical Bank, 559 N.Y.S.2d 704, 712 (App. Div. 1st Dep't 1990) ("It is well settled that an action will lie for the conversion of money where there is a specific identifiable fund and an obligation to return or otherwise treat in a particular manner the specific fund in question.  Money, specifically identifiable and segregated, can be the subject of a conversion action.")  (internal citations omitted).

At no point in the Amended Complaint does ABM meet its burden and generally aver that

the Swanson Defendants controlled any of its property; accordingly the Swanson Defendants do not have fair notice of the claims against them related to unfair competition, misappropriation, and conversion.  See Leibowitz, 445 F.3d at 590; FED. R. CIV. P. 8.  Therefore, the Court grants the Swanson Defendants' Motion to dismiss Counts Two, Four, and Six.

### 2.    Claims Based on Aiding and Abetting or In Concert Liability: Breaches of Fiduciary Duty and Unjust Enrichment[4]

ABM also claims that the Swanson Defendants aided and abetted various alleged breaches of fiduciary duties and duties of loyalty and claims of unjust enrichment.  See Amended Compl. (Dkt. No. 5, Attach. 1) at ¶¶ 136a, 147.  For the same reasons as explained above in Section II.B.13, ABM has failed to plead that the Swanson Defendants had actual knowledge of any unlawful activities and undertook to assist or encourage such activities.  Without alleging facts that suggest that the Swanson Defendants acted in a potentially unlawful manner, ABM simply cannot establish any circumstance under which liability would attach.  Moreover, ABM has not even alleged the elements of aiding and abetting liability in its Amended Complaint.  Therefore, the Court grants the Swanson Defendants' Motion and dismisses Counts Three and Five, claims against them for aiding and abetting breaches of fiduciary duty and unjust enrichment.

### 3.    Tortious Interference with Contract and Prospective Economic Advantage

As discussed above in Sections II.B.7 & 8, in New York, a plaintiff seeking to maintain a claim of tortious interference with contractual relations must first identify the existence of a valid

---

[4] The Court dismissed the Conspiracy Claim in its entirety with respect to all moving Defendants in Section II.B.9 *supra*.

contract between plaintiff and a third party and the defendant's knowledge of the contract.  See

Kirch, 2006 U.S. App. LEXIS 22612, at *35.  In addition, to state a claim for tortious interference

with prospective economic advantage, the plaintiff must at the very least allege that it had a business

relationship with a third party and the defendant knew of that relationship and intentionally

interfered with it.  See id. at * 29.  As noted before, the only business relationship specifically

identified by ABM in its Amended Complaint is the one it had with the Swanson Defendants.  See

Section II.B.7 & 8 *supra*.  ABM has not alleged that the Swanson Defendants interfered with a

contract it had with a third party, and, therefore, it has not stated a threshold element of a tortious

interference with contract claim.  Moreover, ABM has not alleged that the Swanson Defendants

interfered with one of its business relationships, which is again a threshold element for stating a

claim for tortious interference with prospective economic advantage.  To sustain these claims, ABM

must clearly identify in its Amended Complaint a business relation it had with a third party that was

interfered with by the Swanson Defendants; it has not done so.  Accordingly, Counts Seven and

Eight, tortious interference with contract and prospective economic advantage, are dismissed with

respect to the Swanson Defendants.

### 4.     Fraud Claim Against Swanson Defendants

ABM also alleges that the Swanson Defendants made false representations, concealed their

participation in other business activities, and of aiding and abetting the other Defendants fraudulent

activities.  Amended Compl. (Dkt. No. 5, Attach. 1) at ¶¶ 184-187.  As explained above in Section

II.B.12, to assert a claim of fraud, ABM must allege with particularity a misrepresentation or

concealment of a material fact, falsity, scienter by the wrongdoer, justifiable reliance on the

deception, and resulting injury.  See discussion *supra* SectionII.B.12.

With respect to the Swanson Defendants, ABM has failed to allege that they made any specific misrepresentations, as required by Rule 9(b), or concealed any particular material fact.  See, e.g., Amended Compl. (Dkt. No. 5, Attach. 1) at ¶ 187.  As a result, Defendants have not been given precise notice of what conduct is at issue and cannot effectively defend against these allegations. See Billard, 683 F.2d at 57.  Moreover, as explained in Section II.C.2, ABM has also failed to plead clearly facts that would mean the Swanson Defendants had actual knowledge of any fraudulent activities and undertook to assist or encourage such activities; without these facts, no aiding and abetting can be established in any set of circumstances.  Accordingly, ABM's allegations of fraud have not been pleaded with sufficient particularity and the Court grants the Swanson Defendants' Motion to dismiss the fraud claim.

### D.      Defendants' Motion to Dismiss ABM's Demand for Punitive Damages, Attorneys' Fees, and Injunctive Relief

All of the moving Defendants seek to have the Court dismiss ABM's demand for punitive damages, attorneys' fees, and injunctive relief.  See Henneseys Mem. in Support (Dkt. No. 56, Attach. 9) at 23-24; Clasen Mem. in Support  (Dkt. No. 58, Attach. 2) at 17-18; Swanson Mem. in Support  (Dkt. No. 63, Attach. 1) at 9-11.  While the Court may be sympathetic to Defendants' arguments, ABM should be allowed to proceed on its properly-pleaded claims and develop the record more fully before a determination is made regarding the appropriateness of the requested relief.  For example, New York courts have held that punitive damages may be appropriate in actions for a variety of tort actions, and that the decision to award such damages lies with the fact finder.  See Allied Ir. Banks, P.L.C. v. Bank of Am., N.A., No. 03 Civ. 3748 (DAB), 2006 US DIST LEXIS 4270, at *43-*44 (S.D.N.Y. Feb. 2, 2006).  Like a demand for punitive damages, the request

for injunctive relief and attorneys fees may require some additional factual development before a determination can be made regarding the propriety of awarding such relief to ABM.  Accordingly, the Court denies, without prejudice to renew at a later date, Defendants' Motions to dismiss ABM's requested relief.

**III.    Conclusion**

For the foregoing reasons, it is hereby

**ORDERED**, that the Henneseys' Motion to dismiss (Dkt. No. 56) is **GRANTED IN PART and DENIED IN PART**; and it is further

**ORDERED**, that, with respect to the Henneseys and JBH, ABM's Counts Eight, Nine, Eleven, Twelve, Thirteen, and Fourteen of ABM's Amended Complaint (Dkt. No. 5, Attach. 1) are **DISMISSED**; and it is further

**ORDERED**, that Clasen's Motion for judgment on the pleadings (Dkt. No. 58) is **GRANTED IN PART and DENIED IN PART**; and it is further

**ORDERED**, that, with respect to Clasen, ABM's Counts Seven, Eight, Nine, Twelve, Thirteen, and Fourteen of ABM's Amended Complaint (Dkt. No. 5, Attach. 1) are **DISMISSED**; and it is further

**ORDERED**, that Clasen's Motion for sanctions pursuant to Federal Rule of Civil Procedure 11 (Dkt. No. 26) is **DENIED**[5]; and it is further

**ORDERED**, that the Swanson Defendants' Motion to dismiss (Dkt. No. 62) is **GRANTED**

---

[5] Clasen filed moving papers in response to ABM's initial Motion for a temporary restraining order that sought Rule 11 sanctions against ABM.  See Notice of Cross-Motion (Dkt. No. 26, Attach. 1).  There is no indication in those papers that the proper procedure was followed for moving for sanctions under Rule 11, and, as a result, the Court denies this request for relief.

**IN ITS ENTIRETY**; and it is further

ORDERED, that ABM's claims against the Swanson Defendants in its Amended Complaint (Dkt. No. 5, Attach. 1) are **DISMISSED IN THEIR ENTIRETY**; and it is further

ORDERED, that ABM is granted leave to **RE-PLEAD** its claims **WITHIN FORTY-FIVE (45) DAYS** of the date of this Order, failure to do so will result in **DISMISSAL WITH PREJUDICE** of the above counts[6]; and it is further

ORDERED, that the Clerk serve a copy of this Order on the parties.

**IT IS SO ORDERED.**

DATED:          August 29, 2007
                Albany, New York


_____
Lawrence E. Kahn
U.S. District Judge

---

[6] It may be appropriate for a district court to give a plaintiff leave to file an amended complaint when it grants a motion to dismiss for failure to state a claim.  Van Buskirk v. The New York Times Co., 325 F.3d 87, 91 (2d Cir. 2003).  ABM may discover relevant facts to establish a good-faith basis for pleading claims against defendants and this decision does not foreclose that possibility.  See Donini Int'l, S.P.A. v. Satec (U.S.A.) LLC, No. 03 Civ. 9471 (CSH), 2004 U.S. Dist. LEXIS 13148, at n.1*11 (S.D.N.Y. July 13, 2004).  As a result, the Court grants ABM leave to re-plead its claims.